IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

DANIEL P. BJORLIN,

          Plaintiff,                 No. CIV S-09-1793 GEB GGH P

    vs.

T. HUBBARD, et al.,               ORDER &

          Defendants.        FINDINGS AND RECOMMENDATIONS

_____/

Introduction

        Plaintiff, a state prisoner proceeding pro se, seeks relief pursuant to 42 U.S.C. §
1983.  Pending before the court is plaintiff's motion for injunctive relief, filed on January 27,
2010, to which, although no defendant had yet been served, this court ordered a response by two
of the named defendants, Callison (spelled as Calison in the order) and McDonald, within seven
days, by Order, filed on February 4, 2010 (docket # 15).[1] which response was timely filed on
February 16, 2010 (docket # 20) by the Attorney-General's Office.

\\\\\

---

[1] The court directed the Court Clerk to serve the motion for preliminary injunctive relief
upon the Attorney General's Office as well as upon defendants Callison and McDonald and, in
addition to a response, ordered the Attorney General and defendants to ascertain plaintiff's safety
and take any necessary steps to assure his safety.  See docket # 15.

TRO/Motion for Preliminary Injunction

        As the court stated in its <u>Order</u>, filed on February 4, 2010 (docket # 15), plaintiff has brought a "motion for injunction relief," which he apparently intends to be a motion for a temporary restraining order (TRO) or preliminary injunctive relief, declaring that he is in fear for his life and that his life has been threatened.  Motion, pp. 1-2.

*TRO*

        The purpose in issuing a temporary restraining order is to preserve the <u>status</u> <u>quo</u> pending a fuller hearing.  The cases contain limited discussion of the standards for issuing a temporary restraining order due to the fact that very few such orders can be appealed prior to the hearing on a preliminary injunction.  It is apparent, however, that requests for temporary restraining orders which are not <u>ex</u> <u>parte</u> and without notice are governed by the same general standards that govern the issuance of a preliminary injunction.[2]  <u>See</u> <u>New Motor Vehicle Bd. v. Orrin W. Fox Co.</u>, 434 U.S. 1345, 1347 n.2 (1977) (Rehnquist, J.); <u>Los Angeles Unified Sch. Dist. v. United States Dist. Court</u>, 650 F.2d 1004, 1008 (9th Cir. 1981) (Ferguson, J. dissenting); <u>Century Time Ltd. v. Interchron Ltd.</u>, 729 F. Supp. 366, 368 (S.D.N.Y. 1990).  In many cases the emphasis of the court is directed to irreparable harm and the balance of hardships because the merits of a controversy are often difficult to ascertain and adjudicate on short notice.

*Preliminary Injunction Standard*

        "The proper legal standard for preliminary injunctive relief requires a party to demonstrate 'that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an

---

[2] To the extent that this purports to be an ex parte motion for a TRO without notice, the undersigned notes that there are stringent requirements to be imposed under Fed. R. Civ. P. 65 for issuance of such an order, which plaintiff clearly has not met.  <u>Reno Air Racing Ass'n., Inc. v. McCord</u>, 452 F.3d 1126, 1131 (9th Cir. 2006). Rule 65(b) permits issuance of a TRO without "notice to the adverse party or its attorney, only if: (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury...will result to the movant before the adverse party can be heard in opposition; and (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required."

injunction is in the public interest.'" <u>Stormans, Inc. v. Selecky</u>, 586 F.3d 1109, 1127 (9th Cir.

2009), quoting <u>Winter v. Natural Res. Def.</u> , quoting <u>Winter v. Natural Res. Def. Council, Inc.,</u>

___ U.S. ___, 129 S.Ct. 365, 375-76 (2008).

In cases brought by prisoners involving conditions of confinement, any

preliminary injunction "must be narrowly drawn, extend no further than necessary to correct the

harm the court finds requires preliminary relief, and be the least intrusive means necessary to

correct the harm." 18 U.S.C. § 3626(a)(2).

### <u>Underlying Allegations</u>

As the court has previously observed, in his underlying amended complaint, filed

on October 22, 2009 (docket # 12), plaintiff alleges, inter alia, violations by defendants of his

rights under the Eighth Amendment by failing to protect him from a sexual assault by a cellmate,

on September 22, 2009, with whom he was placed by defendant Callison[3] (whom plaintiff

actually alleges set plaintiff up to be injured), and by showing indifference to his concerns

thereafter.  Amended Complaint, pp. 7-9.  Plaintiff also makes claims of retaliation under the

First Amendment: plaintiff alleges that after he had been raped, defendant Callison told him that

the next time he got a cellmate, he (plaintiff) would not be walking out of his cell but would

come out in a body bag for "snitching" against defendant Callison's partner (apparently, by

having filed a grievance relating to defendant Hubbard's alleged harassment of plaintiff).  Id., at

5-7.  When, on September 25, 2009, plaintiff witnessed defendants Swart and Mortell "beat and

punch another inmate in the face," plaintiff was threatened by them to keep silent or he might be

hurt.  Id., at 7-8.  Plaintiff was so frightened that he informed a non-defendant social worker, Mr.

Marrow, about what had happened and he called defendant Perez.  Id., at 8.  On September 30,

2009, defendant C/O Rainey wrote plaintiff up on a CDC-115 rules violation report (RVR) for

obstructing a peace officer by refusing to accept assigned housing, stating that he did not care

---

[3]  Plaintiff has introduced various spellings of this name; the court takes the spelling from defendant Callison's own declaration.  <u>See</u> Callison Declaration, Docket # 20-3.

1   about plaintiff's fears of being assigned an incompatible cellmate, even after plaintiff told him

2   that he had been the victim of a sexual assault eight days earlier and that the cellmate officials

3   planned to put in his cell was one with whom he had had a previous physical altercation.  Id., at

4   8-9.  Plaintiff told Rainey he had even gone on suicide watch because officers had not wanted to

5   move either one of them.  Id., at 9.  Although defendant Perez had granted his 602, he made no

6   attempt to protect plaintiff.  Id.  Plaintiff also alleges that defendants Cummings, Lockhart and

7   Fannon, inter alia, failed to investigate his claims and to protect him.  Id., at 16-17.  Plaintiff

8   seeks money damages.  Id., at 11.

9            *Motion*

10            In his preliminary injunctive relief motion, plaintiff, who identifies himself as a

11   mental health patient in fear for his life, states, under penalty of perjury, that defendants have

12   tampered with his meals and deprived of him of access to showers and law library books; he

13   states emphatically that defendant Callison set him up to be raped by his cellmate, on September

14   20, 2009, an allegation he makes in the underlying amended complaint[4] and reiterates defendant

15   Callison's alleged warning to him that he would come out of his cell next time in a body bag.

16   Motion, p. 2.  Plaintiff further states that on January 18, 2010, he and his cellmate, named

17   Johnson (presumably a different cellmate from the one who allegedly raped plaintiff), had their

18   lives seriously threatened.  Id.  Plaintiff states that "higher officials" have failed to take action to

19   ameliorate the situation and that he is suffering retaliation due to his having filed a 602 grievance

20   and a lawsuit against defendant Hubbard (by which it is unclear whether he means the instant

21   lawsuit, wherein he sued many defendants, including Hubbard, or a different one).  Id.

22            Plaintiff claims that on January 18, 2010, two correctional officers (C/O's),

23   defendant Callison as well as T. Smith, a non-party, both threatened the lives of plaintiff and his

24   ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

25            [4]  There is, however, a discrepancy as to the date plaintiff identifies within his amended
     complaint, September 22, 2009, and the date he claims within his motion, September 20, 2009, as
26   the day on which he was sexually assaulted.

4

1  cellmate, Joseph Johnson, (apparently one with whom he has no problem being housed with)

2  stating that they were going to be separated and killed or set up to be murdered.  Motion, p. 3.

3  Plaintiff avers that both defendant C/O Callison and non-defendant C/O Smith have assaulted

4  him on "numerous occasions" and have tampered with his food.  Id., at 3-4.  Plaintiff is seeking

5  an immediate transfer from HDSP and cautions that if he should wind up injured or dead, any

6  such event will have been orchestrated by defendant Callison and non-party Smith and permitted

7  by defendant McDonald and a non-defendant associate warden named Davey.  Id., at 2, 4.

8  Plaintiff makes his assertions under penalty of perjury.  Id., at 4.

9          On February 5, 2010 (docket # 18), plaintiff filed a document he entitled a

10  declaration but which he failed to sign at all, much less under penalty of perjury.  Within this

11  defective document, plaintiff again asserts his desire to be transferred to a "safer facility," or

12  alternatively to be put into federal protective custody.  Docket # 18, p. 1.  He continues to

13  complain of HDSP ASU SNY inmates being forced to be housed with incompatible cellmates.

14  Id., at 2.  Plaintiff references again the alleged sexual assault to which he claims to have been

15  subjected on September 20, 2009.  Id., at 2-3.  He refers, as well, to the alleged incident on

16  January 18, 2010, this time adding that when C/O Smith and defendant Callison spoke to

17  plaintiff's cellmate, Johnson, as he returned to the cell, non-party Smith is supposed to have said

18  to Johnson: "Nigger, I will kill you!  I will have you hanging in a cell in Z unit like that nigger

19  they found on Christmas."  Id., at 4.  Plaintiff again reiterates that Smith and defendant Callison

20  have threatened to kill him "on many occasions," and that he is in the mental health program and

21  turning to the courts for help as he trusts no one where he is.  Id.

22          *Response/Opposition*

23          The February 16, 2010 (docket # 20), response by the Office of the Attorney

24  General points out that no defendants have yet been served and no waiver is intended by its

25  special appearance.  Response (Resp.), p. 1, note 1.  The Attorney General's Office has

26  determined that plaintiff had been housed in the HDSP Administrative Segregation Unit (ASU)

originally on October 21, 2009, for being in possession of a weapon; plaintiff was found guilty

on the RVR for a weapons violation on February 3, 2009, and assessed a 360-day credit loss and

a ten-month Security Housing Unit (SHU) term.  Resp., pp. 1-2, citing Declaration (Dec.) of R.

Dreith, HDSP Litigation Coordinator ¶ 2.  A Classification Services Representative (CSR)

approved a ten-month SHU term for plaintiff on March 30, 2009, with a June 6, 2009, release

date.  Resp., p. 2, Drieth Dec., ¶ 3.  Plaintiff was referred for non-adverse transfer to the Sensitive

Needs Yard (SNY) of California State Prison-Lancaster (CSP-LAC), on September 10, 2009, due

to safety concerns on the HDSP B SNY, but the CSR endorsement expired on February 3, 2010.

Resp., p. 2, Dreith Dec., ¶ 4.[5]

When, on January 28, 2010, plaintiff was scheduled to appear at the Institutional

Classification Committee (ICC) for a referral back to the CSR to endorse a transfer to either the

CSP-LAC SNY or Pleasant Valley State Prison's (PVSP) SNY, plaintiff refused to attend the

hearing, according to declarant R. Dreith, and the hearing was held with plaintiff in absentia.

Dreith Dec., ¶ 5.  The ICC recommended plaintiff's case be referred to the CSR with a

recommendation for transfer to the SNY at PVSP or CSP-LAC.  Id.

According to Litigation Coordinator Dreith, although plaintiff is currently

awaiting his transfer, he was moved from his housing in Unit D7 to Unit D6, in an abundance of

caution on February 11, 2010, with the aim of ensuring the safety of both plaintiff and the staff

he has accused of threatening him.  Id., at ¶ 6.

Finally, declarant Dreith avers that an investigation into plaintiff's allegations of

rape by a former cellmate was conducted on September 20, 2009, by the HDSP Investigative

Services Unit and has been completed.  Id., at ¶ 7.  Dreith states that the investigation showed

plaintiff to be less than cooperative, failing to provide specific details of the incident; the

investigating officer felt that plaintiff may have been attempting to manipulate staff with false

---

[5]  Dreith refers to CSP-LAC as California State Prison, Los Angeles County, but the Attorney General apparently correctly refers to it as California State Prison-Lancaster.

1    sexual assault allegations to obtain a cell move or a transfer from HDSP.  Id.

2              In a separate declaration, defendant C/O E. Callison denies that he assaulted

3    plaintiff or set him up to be raped or that he has ever threatened or assaulted any inmate.

4    Callison Dec., ¶¶ 2-3.  He further declares that, while he has the authority to initiate bed or cell

5    moves, that all potential cellmates are screened for compatibility by an officer, sergeant or

6    lieutenant and prospective cellmates must sign a chrono indicating they can be suitably housed

7    together.  Id., at ¶ 4.  Further, all moves must be approved and authorized by the unit sergeant or

8    lieutenant, according to declarant Callison.  Id.

9                            *Plaintiff's Further Filing*

10             In motion for an extension of time, filed on February 18, 2010 (docket # 21),

11   which the court will address hereafter, plaintiff attaches a 602 grievance he and his cellmate,

12   Johnson, evidently filed on February 15, 2010.  The grievance confirms by plaintiff his move

13   from D-7 to D-6 that the Attorney General's response indicated had occurred on February 11,

14   2010.  In the grievance, plaintiff apparently means to assert that his troubles have not been

15   resolved by the move.  He claims that defendant Swart, on the same day as the move, February

16   11, 2010, left D-7 to come to D-6, whereupon he destroyed legal documents intended for court

17   belonging to Johnson[6] and himself, as well as Johnson's personal property, in retaliation for the

18   instant lawsuit, the pending motion, and/or other legal matters.  Defendant Swart stated: "this is

19   not over, it's just the beginning...," according to plaintiff's grievance.  The next day, February 12,

20   2010, defendant Swart again came from D-7 to D-6, at the time of breakfast tray pick up and

21   asked plaintiff and Johnson if they liked the "special trays" he had made for them.  Half an hour

22   later defendant Swart and a non-defendant C/O named Marshall came and told plaintiff and

23   Johnson to put on handcuffs for a cell search.  They refused because they did not want the rest of

24

25        [6]  Plaintiff makes frequent reference in his administrative grievance to an inmate named
     Johnson, evidently his current cellmate, as another plaintiff or as a co-plaintiff in this action, but
26   there is no basis for this.  This matter is proceeding with Daniel Bjorlin as the sole plaintiff.

their property to be destroyed by defendant Swart.  When a non-party Correctional Sgt. Lowther came to ask them to cuff up for a property search, they explained what had happened the day before; Lowther told defendant Swart to leave D-6, after which Johnson and plaintiff complied with the cell search (which apparently proceeded without further incident).  Plaintiff in his grievance claims that his "psych doctor" Sloan said he was aware of the threats and harassment plaintiff has been experiencing.

### *Conclusion*

While plaintiff does appear to be seeking preliminary injunctive relief in his motion for an injury or potential injury that bears the necessary relationship to the conduct asserted in the underlying amended complaint, Devose v. Herrington, 42 F.3d 470, 471 (8th Cir. 1994), *per curiam*,[7] plaintiff is hampered in proceeding on his motion by failing to make clear that he seeks injunctive relief within the instant complaint.  Moreover, based on both the response by the Attorney General's Office and on plaintiff's own representation, it appears that plaintiff has been moved from the immediate sphere of defendant Callison of whom he complains most vociferously within his motion.  Further, it appears that plaintiff is to be transferred to another facility in the near future.   While it is difficult to assess at this stage plaintiff's likelihood of success on the merits, the court finds in the most current circumstances that he has not made an adequate showing that he is likely to suffer irreparable harm in the absence of preliminary injunctive relief, even were he to amend the relief he seeks to include injunctive relief in the underlying action.  Nor does the court find that in light of his recent move and apparently imminent transfer that the balance of equities tips in his favor, and that an injunction would be in the public interest.   The motion should be denied.

Motion for Extension of Time

Plaintiff has also asked for an extension of time to submit the ten amended

---

[7] Cited in Anaya v. Campbell, 2009 WL 425034 *1 (E.D. Cal 2009); Houser v. Grant-Ellis, 2010 WL 432327 *1 (D. Ariz. Feb. 2, 2010).

complaint copies, pursuant to the Order, filed on February 4, 2010 (docket # 14), as well as six

additional USM-285 forms.  Motion, filed on February 18, 2010 (docket # 21).  Plaintiff

contends that, as a form of retaliation by defendant Swart and unnamed others, he is being

restricted to making two copies of the amended complaint a week.  Id., at 2.  He also states that

defendant Swart destroyed legal forms and documents related to the instant case.  Id.  The court

has previously referenced the contents of the 602 inmate appeal form that he filed on February

15, 2010, claiming that defendant Swart destroyed his legal work and personal property (as well

as that of another inmate named Johnson) in anger because of plaintiff's having sought a

"restraining order" in this case.  Id., at 3.  The court will grant plaintiff's requests for an extension

of time and additional forms on this occasion.

       Accordingly, IT IS HEREBY ORDERED that:

       1.  Plaintiff's request for an extension of time to return the forms and copies of the

amended complaint necessary for the court to direct service of process and his request for six

additional USM-285 forms, filed on February 18, 2010 (docket # 21), are both granted;

       2.  Plaintiff is granted until March 31, 2010, to return the requisite copies and

forms as set forth in the court's order of February 4, 2010 (docket # 14); and

       3.  The Clerk of the Court is directed to provide plaintiff with six additional USM-

285 forms.

       4.  In addition, the Clerk of the Court must serve a copy of this Order and these

Findings and Recommendations upon Supervising Deputy Attorney General Monica Anderson.

       IT IS RECOMMENDED that plaintiff's motion for preliminary injunctive relief,

filed on January 27, 2010 (docket # 13), be denied.

       These findings and recommendations are submitted to the United States District

Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-

one days after being served with these findings and recommendations, any party may file written

objections with the court and serve a copy on all parties.  Such a document should be captioned

1   "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

2   shall be served and filed within seven days after service of the objections.  The parties are

3   advised that failure to file objections within the specified time may waive the right to appeal the

4   District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

5   DATED: February 26, 2010                                    /s/ Gregory G. Hollows

6                                                    _____
                                                     UNITED STATES MAGISTRATE JUDGE

7   GGH:009
    bjor1793.ofr

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26