IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

DANIEL P. BJORLIN,

    Plaintiff,                           No. CIV S-09-1793 GEB GGH P

  vs.

T. HUBBARD, et al.,

    Defendants.                 FINDINGS & RECOMMENDATIONS

_____/

Introduction

        Plaintiff, a state prisoner proceeding pro se, seeks relief pursuant to 42 U.S.C. § 1983.  On March 5, 2010, this court directed service of the amended complaint upon nine of the defendants.[1]  Although defendants have not yet formally appeared in this action, this court has twice ordered a response to plaintiff's motions for preliminary injunction.  Findings and Recommendations recommending denial of plaintiff's first motion for a preliminary injunction are currently pending before the district judge.

        Pending before the undersigned is plaintiff's second motion for preliminary injunctive relief, filed on March 4, 2010, at docket # 26 and # 28, to which the Attorney

---

[1] The recommended dismissal of other claims and defendants is pending before the district judge.  See Findings and Recommendations, filed on February 4, 2010 (docket # 17).

1

General's Office has filed a response on behalf of defendants,[2] which includes a request for the sanction of dismissal for plaintiff's alleged violation of Rule 11(b) of the Federal Rules of Civil Procedure. Also pending is plaintiff's April 7, 2010 (docket # 34), motion for the court to order that plaintiff and defendants take "a polygraph and submit to sodium penthal [sic] exam," which motion is frivolous and is summarily denied. It was noted within the Findings and Recommendations, filed on March 1, 2010 (docket # 23), recommending denial of the first motion for preliminary injunction that plaintiff in having been moved from D-7 to D-6 had apparently been moved away from defendant Callison's immediate sphere, the defendant about whom he had complained the most within his first motion.

Second Motion for Preliminary Injunction

Plaintiff alleges dramatically in his most recent motion for preliminary injunctive relief that CDCR officials are engaging in retaliatory actions to have him "murdered," and although he has been put up for transfer, is seeking an "emergency transfer" for his safety. Docket # 26, p. 1; docket # 28, p. 1. The court has previously set forth the claims of the second preliminary injunction motion at issue herein,[3] noting that plaintiff now claims that on February 12, 2010, he received a retaliatory[4] serious rules violation report for refusing to comply (along with an inmate J. Johnson, CDC # F-68537, who was his cellmate) with an order to exit their cell for a search, although he alleges that he did comply.[5] Docket # 26, pp. 2, 5; docket # 28, p. 5. The serious rules violation was reported by a non-defendant, Correctional Sergeant K. Lowther.

---

[2] Defendants were granted an extension of time to respond by Order filed on March 22, 2010 (docket # 31).

[3] See Order, filed on March 10, 2010 (docket # 29), pp. 2-3.

[4] A retaliation plaintiff claims was orchestrated by defendant Swart but implemented by Correctional Sergeant K. Lowther. Docket # 26, p. 2.

[5] The copy of the Rules Violation Report plaintiff includes, apparently written by Correctional Sergeant K. Lowther, indicates that on February 12, 2010, plaintiff and Johnson refused to comply until preparations were well under way for a cell extraction. Docket # 26, p. 5.

Docket # 26, pp. 2, 5.

Plaintiff claims that another non-party, Correctional Officer (C/O) G. Jones, told plaintiff and Johnson that he was going to separate them "for that shit you did to Mr. Swart and Mr. E. Cal[l]ison," apparently meaning bringing the instant lawsuit (as C/O's Swart and Callison are two of the defendants named herein) and the prior injunctive relief motion (docket # 28, p. 2). Further, plaintiff alleges that non-party C/O Achernecht[6] and defendant Swart, also on Feb. 12, 2010, threatened both his cellmate, J. Johnson, and himself despite (or because of) their having been moved from D7 to D6 with getting "even." Docket # 28, p. 2.

Thereafter, on the same day, C/O G. Jones apparently attempted to house plaintiff with another inmate, named Coffman (# T-81496), whom plaintiff alleges is a documented skinhead sentenced to two life terms and serving a 42-month SHU term in the administrative segregation unit for stabbing a black inmate named D. Irvin. Docket # 28, at 3-4. Plaintiff claims Irvin was "a direct associate of plaintiff['s]," which makes Coffman plaintiff's enemy. Id., at 5. Plaintiff claims that his placement with this inmate poses a substantial risk of serious harm; he also avers that Coffman is homosexual and is of another race.[7] Id., at 3-4. Plaintiff has apparently refused to accept this cellmate and has refused to sign a compatibility chrono because he fears for his life and believes signing the chrono would protect the staff from liability. Id, at 4.

Plaintiff includes another copy of a serious rules violation report, also arising from events on Feb. 12, 2010, wherein C/O G. Jones reports that plaintiff refused to comply with the order to accept Coffman as a cellmate and stating that the two have been evaluated and deemed

---

[6] In the response, plaintiff's misspelling of this individual's name was corrected from "Archenbeck."

[7] The court notes that among those claims/defendants for which the undersigned has previously recommended dismissal from the underlying amended complaint is any claim by plaintiff of "discrimination and violation of his rights under the Equal Protection Clause of the Fourteenth Amendment by any prison policy of integrated housing for sensitive needs yards inmates against any defendants...." Findings and Recommendations, filed on Feb. 4, 2010 (docket # 17), p. 3.

compatible with HDSP operational procedure and that they are not documented enemies. Id., at 8.

Plaintiff asks the court to order that his transfer be expedited (as noted) and asks that, until then, he be housed with inmate J. Johnson. In its prior order (docket # 29, pp. 3-4), the court also took judicial notice of an exhibit[8] in another case before the undersigned, Sargent v. Statti, et al., CIV S-09-1472 GGH P, wherein a response from a defendant in that case, Warden McDonald, had been ordered (another case wherein the amended complaint had not yet been served). The undersigned observed that among the exhibits attached to the Attorney General's response to the preliminary injunction motion in Sargent was a document arguably quite relevant to the instant action, a copy of a handwritten letter or "kite" directed to "Ice," apparently "confiscated" on February 23, 2010. CIV S-09-1472 GGH P, docket # 52, pp. 56-57. Another exhibit in that filing summarizes the circumstances of discovery of the "kite" and its contents as follows:

> On February 23, 2010 officer Eckelbarger confiscated a kite (letter) from inmate Johnson, CDC # F-68537, FDB6-121L while inmate Johnson was being searched to go to ASU exercise yard. The kite was folded very small with a rubber band wrapped around it. The kite was addressed to "ICE" which is the documented AKA for inmate Bjorlin P-78253, FDB-6-112L. The kite contained the names of officers K. Swart, E. Callison, and T. Smith. In the body of the kite inmate Johnson spoke to circumventing a legal process by seeing the mental health department and being placed on EOP status. Also in the note inmate Johnson spoke to filing multiple briefs and paperwork against officers K. Swart, E. Callison and T. Smith in order to keep their names "coming up", stating in part, "we must tear their asses up from different directions", " these fools will never have time to let shit settle down because we're on that ass like some sharks in bloody fucking water, see Callison's name is coming up too much and Swart's ass is in the meat grinder," and " when the shit hits the fan its going to be a fucking catastrophic disaster for those slimy dog sons of bitches, they will not have a second to recuperate". A copy of this kite was taken to the Litigation coordinator, and placed in inmate Johnson's ASU

---

[8] Judicial notice may be taken of court records. Valerio v. Boise Cascade Corp., 80 F.R.D. 626, 635 n.1 (N.D. Cal. 1978), aff'd, 645 F.2d 699 (9th Cir.), cert. denied, 454 U.S. 1126 (1981).

4

114 file.

This exhibit is signed by E. Callison and dated February 26, 2010. CIV S-09-1472 GGH P, docket # 52, p. 14.[9] The court further noted that although Callison had corrected some of the spelling in the original "kite," the above summary of the contents of the confiscated letter appeared to be neither inaccurate or unfair, also observing that the CDC numbers provided for both plaintiff and inmate Johnson in the memo matched those identifying plaintiff herein and his erstwhile cellmate, Johnson.

*Response*

Included in their response, the Attorney General's Office has authenticated the above-referenced "kite," producing a declaration by C/O D. Ecklebarger, dated March 19, 2010, with attachments that include a copy of the CDC 128 chrono written by D. Ecklebarger regarding discovery of the kite or letter under the insole of one of inmate Johnson's shoes on Feb. 23, 2010, as well as a copy of the previously referenced kite/letter itself. The Office of the Attorney General has also moved to impose Rule 11 sanctions in the form of a dismissal in response to the court's having indicated that it would consider such a motion contending that plaintiff herein has violated Rule 11(b) of the Federal Rules of Civil Procedure.

The Office of the Attorney General states that an investigation into plaintiff's claims of threats to his safety and being at risk was ordered by High Desert State Prison (HDSP) defendant Warden McDonald[10] and included an interview by Security Squad Lieutenant Gamberg (not a defendant). Response, pp. 1-2 & Declaration (Dec.) of M.D. McDonald, ¶¶ 3-4. The copy of the memorandum of Gamberg's March 15, 2010, interview with the plaintiff is

---

[9] A declaration by a C/O D. Ecklebarger attests to his having searched inmate Johnson on Feb. 23, 2010, and his having confiscated a kite or note Johnson "was attempting to pass to his previous cell mate, inmate Bjorlin," plaintiff herein. CIV S-09-1472 GGH P, docket # 52, Declaration of D. Eckelbarger, pp. 53-54, ¶ 3.

[10] The court has recommended that Warden McDonald, inter alia, be dismissed as a defendant in this action. See Docket # 17.

attachment 1 to the McDonald Dec., which records that plaintiff stated that he had filed allegations with the courts regarding staff abusing and threatening him and that he told Gamberg that staff searches his cell constantly and destroys his property.  He is also quoted as having answered "yes" to the question of whether his life was at risk and also stated that he was "scared of Officer[]s Ackernack [sic], Swart, Callison, Jones, and T. Smith" who "constantly screw with" plaintiff, having his "cell searched all the time." McDonald Dec., attachment 1.  He also stated that he was threatened by Officers Swart, Smith and Callison. Id.  Correctional Lt. Gamberg states in the memo that plaintiff further stated that he would only feel safe if housed with Inmate Johnson and that the above-mentioned staff continue to harass him and write him up to stop his transfer. Id.  He also apparently said that Swart harasses him by having his cell searched without any reason and that he felt his safety was jeopardized by the instant lawsuit and that the only solution was for him to be transferred as soon as possible.  Id.  Gamberg also reports that when plaintiff was asked about specific threats, plaintiff would not comment saying that he had sought relief with the courts.  Id.  Defendant McDonald points out that the three officers that plaintiff said were threatening him, [defendant] Swart, [non-party] Smith and [defendant] Callison, are all assigned to Building 7, where plaintiff has not been housed since Feb. 11, 2010, and that plaintiff did not state that either Jones or Ackernecht threatened him. McDonald Dec., ¶ 9.

According to defendant McDonald, plaintiff has been housed in the HDSP administrative segregation unit (ASU) for possession of a weapon, since October 21, 2008. Response, at 2 & McDonald Dec., ¶ 5.  Defendant Warden McDonald recounts that plaintiff had been moved on Feb. 11, 2010, from Facility D's Building 7 to Building 6 in the same facility, also an administrative segregation unit, along with his cellmate Johnson as a result of a prior court order.[11]  Id.  According to McDonald, plaintiff was separated from his cellmate on Feb. 12,

---

[11] The prior order referenced appears to be the one filed on February 4, 2010 (docket # 15), directing, in response to plaintiff's initial preliminary injunction motion alleging that he was in danger, that the Attorney General's Office and defendants ascertain that plaintiff's life was not at risk and to take any necessary steps to assure his safety and to file a response to the motion.

2010, and placed in another cell due to plaintiff's own misconduct on that day, which included plaintiff having incurred three rule violation reports for violating prison regulations on that day. Id., & McDonald Dec., ¶ 6, & attachment 2 (inmate transfer sheet record).

McDonald states that at about 9:00 a.m. on Feb. 12, 2010, C/O Haas (not a defendant), the law librarian, came to plaintiff's and Johnson's cell to conduct a cell inspection, Haas having been informed (by unidentified staff) that plaintiff had a law library reference book which had been altered so that the prison bar code and other marks of identification were covered. McDonald Dec., ¶ 6. Upon being asked to leave their cell for a cell inspection, plaintiff and Johnson refused, during which time, according to McDonald, plaintiff ripped up the book and tried to flush it down the toilet. Id. McDonald states that after plaintiff and Inmate Johnson refused to exit the cell for almost two hours, at about 11:00 a.m., a cell extraction team was gathered, at which point plaintiff and Johnson complied with orders to exit their cell. Id. Two of the rules violation reports arose from this incident: one for "unauthorized possession & destruction of state property" (the library book) and the other for willfully delaying a peace officer in the performance of duty (failing to exit cell for inspection). McDonald Dec., ¶ 7, & attachment 3 (copies of the two reports).[12]

Plaintiff's third RVR arose, according to defendant McDonald, when plaintiff was moved to a different cell on Feb. 12, 2010, when plaintiff refused to be placed with Inmate Coffman, whom housing staff had determined was compatible with him. McDonald Dec., ¶ 8. A copy of this RVR is attached to C/O Jones' declaration (see below). Plaintiff has not had a cellmate, according to McDonald, since Feb. 12, 2010. Id., at 9. In all three RVRs, it is noted

---

[12] The court notes that the copy of the actual report (RVR) regarding the unauthorized possession and destruction of state property does not precisely confirm defendant McDonald's representation that plaintiff tore the book up while he was refusing to exit the cell; rather, the first RVR, by C/O Haas, stated that the reference book at issue that was not supposed to leave the library and had had its library identification inked over, was found during a cell search located in the lower bunk area with plaintiff's legal materials. While it states that plaintiff had damaged the book beyond repair, pages having been ripped out and sections torn, there is no indication that this occurred during the time plaintiff and Johnson were refusing to exit the cell.

that plaintiff participates in the mental health services delivery system at the CCCMS[13] level of care.  Defendant McDonald further declares that his investigation into plaintiff's allegations has revealed that the staff response has been appropriate in the face of plaintiff's misconduct, that no evidence substantiates plaintiff's claims of being harassed, threatened, retaliated against or otherwise subjected to staff misconduct, and that plaintiff makes his allegations for the purpose of harassing staff and to manipulate his housing.  Id., at ¶¶ 6, 10, 12.  McDonald also states that he has been informed that other inmates "may be working in concert on legal matters," whose names he reveals to be David M. David, Rex Chappel and Clarence Sargent.  Id., at ¶ 10.[14]  Plaintiff's [impending] transfer to another institution, McDonald declares, has been cancelled due to the three RVR's, while Inmate Johnson, who had been up for transfer, was transferred to another prison facility on March 17, 2010.  Id., at ¶ 11.

Defendant Swart, second watch floor officer for Facility D, Building 7, Administrative Segregation (ASU), declares under penalty of perjury that his only involvement with plaintiff on or around Feb. 11-12, 2010, was participating with three other officers in escorting plaintiff and his cellmate, Johnson, from Building 7 to Building 6.  Declaration of C. Swart, ¶¶ 2, 5.  After plaintiff and Johnson were placed in holding cells in Building 6, according to defendant Swart, he (Swart) placed their property on a table so that he could inventory the items of property so that only acceptable property would be issued to them.  Swart Dec., ¶ 5.  Defendant Swart states that he was unable to finish this task because he had to return to Building 7, and that he had no further involvement with plaintiff.  Id., at ¶¶ 5-6.  He maintains that he has never threatened or retaliated against plaintiff in any way.  Id., at ¶ 7.

C/O G. Jones, Third Watch Floor Officer for Building 6 in Facility D, ASU,

---

[13] Correctional Clinical Case Management Services.

[14] Curiously, he does not mention Inmate Johnson at this point, whom the Attorney General's Office does identify as one of the other related litigants, and who is the apparent author of the kite/letter referenced.  See Response, pp. 4-5, referencing Johnson v. Martel, et al., 09-2103 JAM JFM P.

1  declares that when he (Jones) arrived on his shift on Feb. 11, 2010, the day plaintiff and Johnson
2  were moved to D-6, plaintiff complained about not having gotten all of his property and asked
3  for a legal book, which Jones found among the property set out in the dayroom and, as it
4  appeared acceptable property to him with plaintiff's name and identifying information on it, he
5  gave it to plaintiff.  Declaration of G. Jones, ¶¶ 2, 5.  The next afternoon (Feb. 12., 2010, at 2:00
6  p.m.) upon his arrival at work, Jones states that he was informed that plaintiff and Johnson had
7  earlier refused to leave their cell for an inspection, leading almost to a cell extraction.  Jones
8  Dec., ¶ 6.  According to Jones, at that time he was told that the book he had given plaintiff as part
9  of plaintiff's legal property the day before had been altered so that prison law library
10 identification marks had been removed and as a result, it had been confiscated that morning.  Id.

11           At around 3:00 p.m. that same day, C/O Jones declares that he removed plaintiff
12 from his and Johnson's cell and placed him in another cell in D-6, whereupon plaintiff refused to
13 take Inmate Coffman as a cellmate, who, Jones avers, was not a documented enemy of plaintiff's
14 and was a compatible cellmate in accordance with institutional policies and procedures.  Id., at ¶
15 7.  Jones issued a rule violation report as a result of plaintiff's having refused Coffman as a
16 cellmate, of which he provides a copy.  Id. & attachment 1.  Jones states that he has had no other
17 negative interaction with plaintiff, and he declares plaintiff allegations that he threatened and
18 retaliated against plaintiff on Feb. 11-12, 2010, to be false.  Id., at ¶¶ 4, 8.

19           M. Achernecht, second watch floor officer for D-6, ASU, also declares that
20 plaintiff's allegations that he threatened or retaliated against plaintiff on Feb. 11-12, 2010, are
21 false and that he has never done so, stating that his only involvement with plaintiff occurred
22 when he participated with other officers in the near extraction of plaintiff and Johnson from their
23 cell on Feb. 12, 2010, when they refused to come out for a cell inspection.  Declaration of M.
24 Achernecht, ¶¶ 2, 4-6.  Both inmates, however, having complied with orders to leave the cell,
25 according to C/O Achernecht, he thereafter escorted Johnson to a holding cell, while another
26 staff member took plaintiff to a separate such cell after which Achernecht had no further

involvement with plaintiff. Id., at ¶ 5.

*Preliminary Injunction Standard*

"The proper legal standard for preliminary injunctive relief requires a party to demonstrate 'that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.'" Stormans, Inc. v. Selecky, 586 F.3d 1109, 1127 (9th Cir. 2009), quoting Winter v. Natural Res. Def. Council, Inc., ___ U.S. ___, 129 S.Ct. 365, 375-76 (2008).

In cases brought by prisoners involving conditions of confinement, any preliminary injunction "must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct the harm." 18 U.S.C. § 3626(a)(2).

Discusssion

Plaintiff's Motion for a Preliminary Injunction

Plaintiff does not make the requisite showing, particularly in the face of the Attorney General's response, that he is likely to suffer irreparable harm without preliminary injunctive relief, or that the balance of equities weigh in his favor, or that an injunction would be in the public interest. As to the likelihood of success on the merits, which is more than evident in its lack of merit, see the discussion below. In addition, on this point as well, although the amended complaint is in the process of being served, the Attorney General's Office, on behalf of the defendants who have not yet appeared suggests strongly that plaintiff's claims have not yet been administratively exhausted. See Response, p. 8 & Declaration of R. Dreith, HDSP Litigation Coordinator, declaring that plaintiff has failed to exhaust any inmate grievance through the second level. Dreith Dec., ¶ 7, attachment 1, inmate grievance log for plaintiff Bjorlin.

By the Prison Litigation Reform Act of 1995 ("PLRA"), Congress amended 42 U.S.C. § 1997e to provide that "[n]o action shall be brought with respect to prison conditions

1  under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail,
2  prison, or other correctional facility until such administrative remedies as are available are
3  exhausted." 42 U.S.C. § 1997e(a). The exhaustion requirement "applies to all inmate suits about
4  prison life, whether they involve general circumstances or particular episodes, and whether they
5  allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532, 122 S. Ct.
6  983, 992 (2002).

7  Exhaustion of prison administrative procedures is mandated regardless of the
8  relief offered through such procedures. Booth v. Churner, 532 U.S. 731, 741, 121 S. Ct. 1819,
9  1825 (2001). A remedy is available for purposes of § 1997e(a) as long as the administrative
10 process has authority to take some action in response to the prisoner's grievance, even if the
11 action that might be taken is not the remedial action sought by the prisoner. Id. at 736 & n. 4,
12 121 S. Ct. at 1823 & n.4. Courts may not read futility or other exceptions into the statutory
13 exhaustion requirement of the PLRA. Id. at 741 n.6, 121 S. Ct. at 1825.

14 It is clear that under 42 U.S.C. § 1997e(a) no action shall be brought with respect
15 to prison conditions *until* such administrative remedies as are available are exhausted.
16 McKinney v. Carey, 311 F.3d 1198. If the court concludes that the prisoner has not exhausted
17 administrative remedies, "the proper remedy is dismissal of the claim without prejudice." Wyatt
18 v. Terhune, 315 F.3d 1108, 1120 (9th Cir. 2003).

19 It would be premature to attempt to adjudicate this question at this stage, unfairly
20 depriving plaintiff of the notice requirements of Wyatt, supra, 315 F.3d at 1120 n.14, and also
21 because, due to defendants' lack of appearance at this point, the question is not squarely before
22 the court, but the court does note that in his response, which does not express any substantive
23 point of his initial motion, instead asking for a polygraph, he makes no reference to the question
24 of exhaustion. In any event, the court finds that plaintiff has not met his burden to show
25 preliminary relief is warranted. Moreover, his motion as to being housed with J. Johnson would
26 have to be denied as moot as this inmate is no longer housed at HDSP, according to the Office of

the Attorney General.

<u>Attorney General's Motion for Sanctions Under Rule 11(b)</u>

This court takes judicial notice of <u>Johnson v. Martel, et al.</u>, 09-2103 JAM JFM P. Review of that case brought by Joseph Johnson, CDC # F-68537, plaintiff's former cellmate, reveals that there is a pending motion for an injunction, filed by Johnson on January 28, 2010, which, inter alia, accuses C/O's Callison and Smith, after Johnson had refiled a 602, of having targeted him and of whom he is afraid of being poisoned because of hair and gravel he has found in his dinner tray and because Callison allegedly told him he had become their new project; Johnson also claims Callison and Smith have threatened to have him moved and murdered. Case No., 09-2103, docket # 18, pp. 4-6. This motion bears a striking resemblance in form to that of the instant plaintiff's and was filed just one day after plaintiff's initial preliminary injunction motion was filed.[15]

In another case that, like the instant one, is before the undersigned, <u>Sargent v. Statti, et al.</u>, 09-1472 MCE GGH P, the court has noted that the above-referenced confiscated kite, even though it did not directly implicate plaintiff Sargent "could lead to the inference that plaintiff [Sargent], also an administrative segregation inmate at HDSP, is among those inmates who may be unfairly targeting, inter alia, Officers Callison and Smith...." Case No. 09-1472, docket # 56, p. 6. In that case, plaintiff's motion for a preliminary injunction, filed on February 10, 2010 (docket # 48), is predicated on insufficiently supported claims centering on Callison and Smith and another officer, alleging that they had beaten him and destroyed his property (and noting that, in any event, that plaintiff may be suffering from illnesses creating a perception on his part of retaliation and that plaintiff had been removed to another building based on a different claim, beyond the immediate proximity of these officers) has been denied. Id., at pp. 3, 5; docket

---

[15] In fact, by application of the mailbox rule, both of these motions appear to have been filed on January 24, 2010. Compare, docket # 13, herein at p. 5, with Case No., 09-2103, docket # 18, p. 6.

# 62.

The Attorney General's Office has also noted that along with plaintiff herein and Inmates Johnson and Sargent, Inmate David M. David, CDC # F-78383, also filed a similar motion in his lawsuit at around the same time. Taking judicial notice of <u>David v. Schwarzenegger, et al.</u>, Case No. 09-0092 CMK P, the court observes that plaintiff David filed a "motion for emergency relief" on January 6, 2010 (docket # 21), wherein although he does not appear to name Officers Callison or Smith, he does claim to be the victim of retaliation for making claims regarding medical needs and to be targeted for murder by being sent to a yard at HDSP where there are still gangmembers who are part of a planned hit on him. In what is apparently intended as a supplementary filing to the above motion, Inmate David, on January 25, 2010 (docket # 22, p. 2), filed a motion wherein he asks that he and inmates Johnson, Bjorlin and Sargent be protected by the court. In that filing, he claims that inmates Johnson and Bjorlin were directed to "cuff up" on the night of January 18, 2010, because Callison wanted to talk to Johnson. David claims that this was a "frightening occurrence...because there is no legitimate reason for the unlock" when it is "so close to a shift change." Case No. 09-0092, Docket # 22, p. 2. David claims that twenty minutes later unidentified officers returned with Johnson, saying "And they'll just find you hanging in the cell." Id. Among the exhibits attached to that filing of Inmate David is a copy of one declaration each by Johnson, by Bjorlin (the plaintiff in this case), and by Sargent regarding their claims against, inter alia, C/O's Smith and Callison. At this time, David's motions for preliminary injunctions (which included two prior to the one noted herein at docket # 12 & docket # 19) and restraining orders have been denied without prejudice. Case No. 09-0092, Docket # 26.

Plaintiff Sargent does not appear to deny that the inmates have been working together but rather appears to suggest that they as a group have been targeted for abuse and resources have been pooled for meaningful court access because the ASU inmates do not have law library access. Case No. 09-1472, docket # 58, pp. 4-5.

The Office of the Attorney General moves for the sanction of dismissal of this case, contending that plaintiff has brought it with an improper motive and in bad faith. Response, pp. 5-10.

Rule 11(b) of the Federal Rules of Civil Procedure states, under the heading "Representations to the Court":

> By presenting to the court a pleading, written motion, or other paper— whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
>
> (3) the factual contentions have evidentiary support or, if specifically, so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

"Rule 11 is designed to deter attorneys *and unrepresented parties* from violating their certification that any pleading, motion or other paper presented to the court is supported by an objectively reasonable legal and factual basis; no showing of bad faith or subjective intent is required." Truesdell v. Southern California Permanente Medical Group, 209 F.R.D. 169, 173-174 (C.D. Cal. 2002) [emphasis added]. The Attorney General's Office (hereafter AG) (Response, p. 6) cites Merrigan v. Affiliated Bankshares of Colorado, Inc., 775 F. Supp. 1408, 1412-13 (D. Colo. 1991) (affirmed in an unpublished opinion, 956 F.2d 278, cert. denied, 506 U.S. 823, 113 S. Ct. 76 (1992), for the principle that the imposition of Rule 11 sanctions serves several purposes which include: "1) deterring future litigation abuse, (2) punishing present litigation abuse, (3) compensating victims of litigation abuse, and (4) streamlining the court

docket and management of the case."

"A district court may impose sanctions sua sponte." Foster v. Wilson, 504 F.3d 1046, 1053 (9th Cir. 2007). Before sanctions are imposed on a party sua sponte, "the general rule is that [the court] must first issue an order to show cause why sanctions should not be imposed to give...the party an opportunity to explain his...conduct." Navellier v. Sletten, 262 F.3d 923, 943 (9th Cir. 2001). In this instance, the undersigned invited the Office of the Attorney General/defendants to determine whether a motion under Rule 11(b) would be appropriate in the circumstances within the order directing that a response be filed to plaintiff's latest motion for a preliminary injunction, stating that the court would consider such a motion "seeking sanctions, up to and including dismissal of this action,"[16] thereby affording plaintiff ample notice of where any such responsive filing/motion might lead. Plaintiff's only response to that order or to the AG's response and motion has been to ask that all parties be directed to undergo a polygraph/sodium pentathol exam, a response that borders on the absurd and wholly fails to address any issue of substance raised by the AG. Nor does it offer any substantive support regarding the allegations of his motion for a preliminary injunction.

The Ninth Circuit has made clear that "Rule 11 provides for the imposition of sanctions when a motion is frivolous, legally unreasonable, or without factual foundation, or is brought for an improper purpose." Warren v. Guelker, 29 F.3d 1386, 1388 (9th Cir. 1994) (per curiam). Moreover, "the rule explicitly applies to parties not represented by attorneys." Id., at 1390; see also, id. at 1389 (in forma pauperis pro se prisoner's misrepresentation about previous lawsuits may violate Rule 11).

As the AG acknowledges, dismissal is a harsh penalty. Response, p. 6. In order to impose the sanction of dismissal, a district court weighs five factors:

> (1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its dockets; (3) the risk of prejudice to

---

[16] See Order, filed on March 10, 2010 (docket # 29), p. 4.

15

```
                the party seeking sanctions; (4) the public policy favoring
                disposition of cases on their merits; and (5) the availability of less
                drastic sanctions.
```

Henry v. Gill Industries, Inc., 983 F.2d 943, 948 (1993)(factors weighed for dismissal as a discovery sanction under Fed. R. Civ. P. 37, citing Porter v. Martinez, 941 F.2d 732, 733 (9th Cir.1991)) (internally quoting the Malone factors set forth in Malone v. United States Postal Serv., 833 F.2d 130 (9th cir. 1987), for determining when a court may dismiss for failure to comply with a court order).

As noted in Wanderer v. Johnston, 910 F.2d 652, 653, 656 (9th Cir.1990) (where a "very substantial monetary default judgment" entered for plaintiffs under Rule 37 for defendants' "flagrant discovery violations" was affirmed: "The first two of these factors favor the imposition of sanctions in most cases, while the fourth cuts against a ... dismissal sanction. Thus the key factors are prejudice and the availability of lesser sanctions."

The AG contends that plaintiff has brought two falsified motions while the case is still in its most preliminary stage. Response, p. 7. As to the first two factors, there is no doubt that plaintiff's filings have both drawn out this litigation as well as needlessly but substantially burdened this court, which has been repeatedly recognized as significantly over-burdened with prisoner litigation. The AG's contention (id.) that the motions of inmates Johnson, David and Sargent, as well as of plaintiff, are examples of baseless filings unnecessarily occupying and consuming the limited resources of this court appears to be well-founded; some of these individuals filed multiple motions before their complaint or amended complaint had been screened or served. However, of course, only the disposition of plaintiff Bjorlin's case is at issue herein.

With regard to the third factor of prejudice to plaintiff if dismissal were imposed, the AG indicates that, as noted earlier, plaintiff does not appear to have exhausted his administrative remedies, that in combination with the alleged falsity of the claims in the motion (the amended complaint containing similar claims against Callison, Smith and Swart), would

signify that dismissal at this point would hardly prejudice plaintiff. Response, p. 8. As to the fourth factor, the AG asserts that plaintiff's allegations have been shown to be meritless to this point and instead the filings have been intended to harass correctional officers, and, in fact, plaintiff has succeeded in doing so with these initial motions and should not be permitted to continue to do so. Id.

"It is well settled that dismissal is warranted where... a party has engaged deliberately in deceptive practices that undermine the integrity of judicial proceedings...." Anheuser-Busch, Inc. v. Natural Beverage Distributors, 69 F.3d 337, 348 (9th Cir. 1995) (affirming dismissal of counterclaim with prejudice under court's inherent power and authority of Rule 37). The Ninth Circuit has affirmed dismissal of a state pro se prisoner's § 1983 case as a sanction for misrepresentations in a complaint and an in forma pauperis application. Greer v. Schriro, 255 Fed.Appx. 285 *1 (unpub.) (9th Cir. 2007).[17]

The court's review of the inmate cases noted above gives rise to a strong implication of collusion among these inmates, confirming what appears to be a litigation strategy in the confiscated kite/letter against, one that is wholly improper, possibly fraudulent, and one which is not saved by plaintiff's claiming his willingness to be subjected to a polygraph and/or sodium pentathol, rather than addressing the issue of the confiscated letter or otherwise providing a substantive response. Wanderer v. Johnston, 910 F.2d 652, 656 (9th Cir.1990). On the other hand, it is possible that there is some truth to the claims of this plaintiff and the other inmates whose cases have been noted above and that they have been mistreated; unfortunately, however, in this instance, plaintiff's repeated filing of motions for preliminary injunction have not been adequately supported undermining any possible merit that the underlying action may have had. In addition, as noted, plaintiff squandered any opportunity to provide any substantive response to

---

[17] Unpublished Ninth Circuit decisions may be cited commencing with decisions issued in 2007. Ninth Circuit Rule 36-3. Although still not precedential in the binding sense, the unpublished decisions do have a certain amount of persuasive value, and indicate how Ninth Circuit judges apply binding precedent.

the AG's motion.

Accordingly, IT IS ORDERED that plaintiff's April 7, 2010 (docket # 34), motion for a polygraph/sodium pentathol exam be administered to plaintiff and defendants is frivolous and is summarily denied.

IT IS RECOMMENDED that:

1. Plaintiff's second motion for preliminary injunctive relief, filed on March 4, 2010 at docket # 26 and docket # 28, be denied; and

2. Defendants counter-motion, pursuant to Fed. R. Civ. P. Rule 11, filed on March 22, 2010 (docket # 32), be granted and this action be dismissed with prejudice.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within seven days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: April 26, 2010                    /s/ Gregory G. Hollows

GREGORY G. HOLLOWS
UNITED STATES MAGISTRATE JUDGE

GGH:009
bjor1793.mtns